AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)   ☐ Original   ☐ Duplicate Original

LODGED
CLERK, U.S. DISTRICT COURT
05/28/2025
CENTRAL DISTRICT OF CALIFORNIA
BY: ___MB___ DEPUTY

# UNITED STATES DISTRICT COURT
for the
Central District of California

FILED
CLERK, U.S. DISTRICT COURT
05/28/2025
CENTRAL DISTRICT OF CALIFORNIA
BY: ___JD___ DEPUTY

United States of America

v.

Braulio Santarosa,

Defendant

Case No. 2:25-mj-03241-DUTY

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, Scott Wittmier, the complainant in this case, state that the following is true to the best of my knowledge and belief. On or about the date of May 26, 2025 in the county of Los Angeles in the Central District of California, the defendant violated:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. § 1326(a) | Illegal Alien Found in the United States Following Removal |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/
Complainant's signature

Scott Wittmier, DHS-HSI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: May 28, 2025

*Karen E. Scott*
Judge's signature

City and state: Santa Ana, California

Hon. Karen Scott, U.S. Magistrate Judge
*Printed name and title*

AUSA: Christina Marquez (x4061)

**AFFIDAVIT**

I, Scott Wittmier, being duly sworn, declare and state as follows:

**I. PURPOSE OF AFFIDAVIT**

1. This affidavit is made in support of criminal complaints against and arrest warrants for the following twelve individuals:

    a. GUILLERMO MARTINEZ-PINEDA ("MARTINEZ PINEDA"),

    b. MIGUEL TORIBIO-CRUZ ("TORIBIO-CRUZ"),

    c. EZEQUIEL PALAFOX-GALACIA ("PALAFOX-GALACIA"),

    d. BRAULIO SANTAROSA ("SANTAROSA"),

    e. MARIA SALVADOR-MANUEL ("SALVADOR-MANUEL"),

    f. MARIA SANTIAN-NUNEZ ("SANTIAN-NUNEZ"),

    g. ARTEMIO GRANDE-CELIC ("GRANDE-CELIC"),

    h. IGNACIO SOLARIO-SOLARIO ("SOLARIO"),

    i. JORGE BARTOLON-VELAZQUEZ ("BARTOLON-VELAZQUEZ"),

    j. KEVIN CASILLAS-CORONA ("CASILLAS-CORONA"),

    k. JONATHON HERRERA-COAPANGO ("HERRERA-COAPANGO"), and

    l. RAFAEL GOMEZ-VAZQUEZ ("GOMEZ-VAZQUEZ"),

(collectively, "defendants"), charging them with violating Title 8, United States Code, Section 1326(a), Illegal Alien Found in the United States Following Deportation, or Section 1325(a), Improper Entry by Alien.

2. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and

information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show that there is sufficient probable cause for the requested complaints and warrants and does not purport to set forth all my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## II. BACKGROUND OF SPECIAL AGENT SCOTT WITTMIER

3.   I have been employed as a Special Agent for the U.S. Department of Homeland Security ("DHS"), Homeland Security Investigations ("HSI") since August 2008, and I am currently assigned to the Border Enforcement Security Team, Maritime Smuggling group within the HSI Long Beach, California office.  While employed by HSI, I have investigated federal criminal violations related to Intellectual Property Rights, counter-proliferation, trade fraud, financial, cybercrime, child exploitation, narcotics, and immigration law.  I have gained experience through training at the Criminal Investigator Training Program ("CITP") and ICE Special Agent Training ("ICE-SAT") at the Federal Law Enforcement Training Center ("FLETC") located in Glynco, Georgia.  I have also taught U.S. Customs and Immigration investigations at FLETC.

## III. STATEMENT OF PROBABLE CAUSE

4.   I learned the following from Customs and Border Protection Officer ("CBPO") Christopher Griffith:

a. On May 26, 2025, at approximately 12:02 a.m. the Long Beach Police Department ("LBPD") reported a possible smuggling vessel that landed in the vicinity of Ballast Point (Alamitos Bay), Long Beach, California, which is not a designated port of entry. LBPD notified the Maritime Coordination Center ("MCC") of the suspected event. At about 12:13 a.m., the Long Beach Seaport, Special Enforcement Group ("SEG") arrived on scene. A search of the area, including the eastern inlet (jetty), resulted in the apprehension of twelve suspected illegal aliens (ten male and two female Mexican nationals). All the subjects were soaking wet, and some had cuts and abrasions on their hands and arms from climbing out of the ocean onto the jagged jetty rocks. A towing vessel in the area reported witnessing a pleasure craft vessel drop off multiple people into the ocean water at the end of the eastern jetty. The smuggling vessel continued south along the coast and has not been located.

b. At about 3:20 a.m., defendants advised CBPOs that they were Mexican nationals. All aliens were asked individually if they had sustained any injuries and if they required medical attention. All aliens were asked individually about their citizenship and if they had proper documentation to legally enter the United States. All aliens stated they were from Mexico and did not have any documents allowing them to enter or remain in the United States.

c. Defendants were transported to the San Clemente Border Patrol Station for processing, where they were

fingerprinted. Defendants' biographical information were then entered into DHS computer indices.

5. Based on my training and experience, I know that a DHS alien file ("A-File") is a file in which immigration records are maintained for aliens admitted to or found in the United States. I also know that a DHS A-File usually contains photographs, fingerprints, court records of conviction, and records relating to deportation or other actions by INS or DHS with respect to the subject alien for whom the DHS A-File is maintained.

6. Based on my training and experience, I know that the DHS computer indices track and document each time an alien is deported or excluded from the United States by ICE, was deported or excluded by the former INS, or is granted permission to enter or re-enter the United States.

7. Database checks revealed the following regarding the below defendants charged with violating 8 U.S.C § 1326(a), Illegal Alien Found in the United States Following Deportation:

    a. MARTINEZ-PINEDA's fingerprints taken at the San Clemente Border Patrol Station matched the fingerprints contained in the A-file 078-454-814. MARTINEZ PINEDA had been previously removed on April 10, 2025, after being found by immigration officials to be inadmissible pursuant to Section 235(b)(1) of the Immigration and Nationality Act ("INA"). Since defendant's most recent physical removal from the United States noted above, defendant was found in the County of Los Angeles County, in the Central District of California on May 26, 2025, based on a DHS database notification.

      b.    PALAFOX-GALACIA's fingerprints taken at the San Clemente Border Patrol Station matched the fingerprints contained in the A-file 200-230-122. PALAFOX-GALACIA had been removed on December 22, 2022, after being found by immigration officials to be inadmissible pursuant to Section 235(b)(1) of the INA. Since defendant's most recent physical removal from the United States noted above, defendant was found in the County of Los Angeles, in the Central District of California on May 26, 2025, based on a DHS database notification.

      c.    SANTAROSA's fingerprints taken at the San Clemente Border Patrol Station matched the fingerprints contained in the A-file 092-126-883. SANTAROSA had been removed on March 19, 2025, after being found by immigration officials to be inadmissible pursuant to section 235(b)(1) of the INA. Since defendant's most recent physical removal from the United States noted above, defendant was found in the County of Los Angeles, in the Central District of California on May 26, 2025, based on a DHS database notification.

      d.    BARTOLON-VELAZQUEZ's fingerprints taken at the San Clemente Border Patrol Station matched the fingerprints contained in the A-file 205-922-272. BARTOLON-VELAZQUEZ had been removed on April 27, 2013, after being found by immigration officials to be inadmissible pursuant to Section 235(b)(1) of INA. Since defendant's most recent physical removal from the United States noted above, defendant was found in the County of Los Angeles, in the Central District of California on May 26, 2025, based on a DHS database notification.

   e. CASILLAS-CORONA's fingerprints taken at the San Clemente Border Patrol Station matched the fingerprints contained in the A-file 221-202-536.  CASILLAS-CORONA had been removed on April 29, 2025, after being found by immigration officials to be inadmissible pursuant to Section 235(b)(1) of the INA.  Since defendant's most recent physical removal from the United States noted above, defendant was found in the County of Los Angeles, in the Central District of California on May 26, 2025, based on a DHS database notification.

 8. There is no record of any application nor permission from the Secretary of Homeland Security or the U.S. Attorney General for the above defendants to re-enter the United States since their respective most recent removal.  Based upon my training and experience, as well as the training and experience of other law enforcement personnel involved in this investigation, I know that a record reflecting such application or permission would ordinarily be found within the DHS indices I reviewed.

 9. Database checks revealed the following regarding the below defendants charged with violating 8 U.S.C § 1325(a), Improper Entry by Alien:

   a. SALVADOR-MANUEL has never applied for or received from the Attorney General or the Secretary of Homeland Security, permission to enter the United States.  Based on my training and experience, I know that such documentation is required to enter the United States legally and that if such documentation existed, it would ordinarily be found in DHS computer indices or

Alien file. According to the DHS indices, SALVADOR-MANUEL has no prior contact with DHS.

      b.   SANTIAN-NUNEZ has never applied for or received from the Attorney General or the Secretary of Homeland Security, permission to enter the United States. Based on my training and experience, I know that such documentation is required to enter the United States legally and that if such documentation existed, it would ordinarily be found in DHS computer indices or Alien file. According to the DHS indices, SANTIAN-NUNEZ has no prior contact with DHS.

      c.   GRANDE-CELIC has never applied for or received from the Attorney General or the Secretary of Homeland Security, permission to enter the United States. Based on my training and experience, I know that such documentation is required to enter the United States legally and that if such documentation existed, it would ordinarily be found in DHS computer indices or Alien file. According to the DHS indices, GRANDE-CELIC has no prior contact with DHS.

      d.   SOLARIO has never applied for or received from the Attorney General or the Secretary of Homeland Security, permission to enter the United States. Based on my training and experience, I know that such documentation is required to enter the United States legally and that if such documentation existed, it would ordinarily be found in DHS computer indices or Alien file. According to the DHS indices, SOLARIO has no prior contact with DHS.

  e. TORBIO-CRUZ has never applied for or received from the Attorney General or the Secretary of Homeland Security, permission to enter the United States.  Based on my training and experience, I know that such documentation is required to enter the United States legally and that if such documentation existed, it would ordinarily be found in DHS computer indices or Alien file.

  f. HERRERA-COAPANGO has never applied for or received from the Attorney General or the Secretary of Homeland Security, permission to enter the United States.  Based on my training and experience, I know that such documentation is required to enter the United States legally and that if such documentation existed, it would ordinarily be found in DHS computer indices or Alien file.

  g. GOMEZ-VAZQUEZ has never applied for or received from the Attorney General or the Secretary of Homeland Security, permission to enter the United States.  Based on my training and experience, I know that such documentation is required to enter the United States legally and that if such documentation existed, it would ordinarily be found in DHS computer indices or Alien file.

### IV. CONCLUSION

10. For all the reasons described above, there is probable cause to believe that defendants have committed a violation of Title 8, United States Code, Section 1326(a), Illegal Alien Found in the United States Following Removal, or Title 8, United States Code, Section 1325(a), Improper Entry by Alien.

Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this  28th   day of May
2025.

*Karen E. Scott*
_____
HONORABLE KAREN E. SCOTT
UNITED STATES MAGISTRATE JUDGE